### SARAH SHACKLETON

*v.*

### JOSEPH SHACKLETON.

1. A wife, by voluntarily having sexual intercourse with her husband, after she knows that he has committed adultery, and that she can prove it, thereby condones his offence.

2. Matrimonial condonation is always conditional and limited; the party forgiven must, to retain the benefit of the pardon, treat the other, in the future, with conjugal kindness and fidelity, and, as a general rule, the pardon extends only to such offences as are known to the pardoning party.

Shackleton v. Shackleton.

3. The rule that pardon may be implied from sexual intercourse is not enforced so rigorously against a wife as it is against a husband, and the reason is that a wife is, to a considerable extent, subject to and dependent on her husband, and his guilt is of less consequence to her than her guilt is to him.

On bill, answer and proofs.

*Mr. Garret Berry*, for the complainant.

*Mr. Alan H. Strong*, for the defendant.

VAN FLEET, V. C.

This is a suit by a wife against her husband for divorce. The charge is adultery. The husband's guilt is proved. There is no difficulty on that score, but the case nevertheless presents a debatable question, and that is, whether all the wrongs on which the complainant's right of action rests have not been pardoned?

The parties were married in August, 1867. They have five children. They all live with their mother. The proofs show that the defendant induced another woman, by falsely representing himself to be a single man, to enter into a contract of marriage with him, in November, 1881, and that he and she, from that date on until April, 1889, lived together as husband and wife. During the same period the defendant also lived with the complainant as his wife. He, however, spent the greater part of his time with the other woman. His adulterous intercourse with her extended over a period of more than seven years. In April, 1889, this other woman brought a suit for divorce against the defendant, for adultery, in the superior court of the city of New York. He was then a citizen of this state, and notice of that suit was given to him by publication in a New York newspaper. The complainant saw that publication soon after it was made, and she admits that it led her to suppose that the defendant had lived with this woman as his wife. She did not see the defendant, after the publication came to her knowledge, until the 29th day of May following. She then accused him with having committed adultery with this woman. He assured her, with

great earnestness, that the charge was false, and told her that if she would go with him to his lawyer and to one of his employ-ers, he could satisfy her of his innocence. She says she told him that she believed him to be guilty, notwithstanding his protesta-tions of innocence, and also that she would never forgive him. She admits that the truth is that she believed he was guilty in spite of his denials. And she frankly confesses that she had sexual intercourse with him during the night of the day on which this conversation occurred. Her evidence shows that it was voluntary. He went to bed first, she entered the same bed shortly afterward, and there the intercourse occurred. He left her the next morning and did not return until after this suit was brought. The complainant's bill was filed June 7th, 1889. The important question which this condition of facts raises is, did the complainant, by allowing the defendant to have sexual inter-course with her, on May 29th, condone all his adulteries?

The law is settled that a wife, by voluntarily having sexual intercourse with her husband, after she knows that he has com-mitted adultery, and that she can prove it, thereby pardons his offence. *2 Bish. Mar. & D.* § *43 ; Quincy* v. *Quincy, 10 N. H. 272, 274.* Such act necessarily implies forgiveness. A husband by committing adultery violates one of the most sacred duties imposed upon him by the marriage contract, and by his wrong forfeits all his rights under the contract. By his infidelity he puts it in the power of his wife to have the bond which binds her to him dissolved ; it is, therefore, entirely consonant with both reason and justice that if she freely consents to sexual inter-course, after she has full knowledge of his guilt, that her consent should operate as a pardon of his wrong. But condonation in such cases is always conditional and limited ; the party forgiven must, to retain the benefit of the pardon, treat the other, in the future, with conjugal kindness and fidelity ; and, as a general rule, the pardon extends only to such offences as are known to the pardoning party when the intercourse occurs. With regard to the limitation of this rule, Bishop says : "Alike, in reason and in law, forgiveness cannot take place without a knowledge of the existence of the thing to be forgiven, so that such knowl-

edge is one of the elements of every presumed condonation."
*2 Bish. Mar. & D.* § *38.* An instructive example of the manner
in which this principle is applied, is given in *Alexandre* v. *Alex-
andre, L. R. (2 Pro. & Div.) 146.* A husband brought a suit
against his wife for divorce, on the ground of adultery. The
parties were married in January, 1856, and lived together for a
short time thereafter and then separated, and did not resume
cohabitation until March, 1868. After resuming cohabitation
they remained together for only a few weeks. The husband then
brought his suit. While they were separated, the wife had a
child by another man—it was born in 1860—and after the birth
of the child, and before they resumed cohabitation, the wife com-
mitted other adulteries. While the negotiations looking to a
restoration of conjugal relations were going on, the wife confessed
the adultery which resulted in the birth of the child, but con-
cealed those subsequently committed. The question was whether
the husband had not, by taking his wife back under the circum-
stances stated, condoned all her offences, but the court held that
the offences committed subsequent to the birth of the child had
not been condoned, because it could not be presumed that the
husband had forgiven wrongs that he did not know had been
committed. The doctrine that the pardon implied from sexual
intercourse shall extend only to offences known to the pardoning
party when the intercourse occurs, is no less a dictate of sound
reason than of justice. Willingness to forgive a single offence,
or even a series of offences, committed under circumstances of
strong temptation, would not give the least support to a pre-
sumption that the injured party, if he or she knew the whole
truth, would forgive a long course of profligacy. Forgiveness
may be so expressed, certainly by words, and possibly also by
conduct without words, as to show that the injured party means
to blot out the whole past and to forgive everything, both
offences known and unknown, but in no case should the court so
adjudge, as against an injured wife, except the proofs show very
clearly that such was her purpose. The question whether a
matrimonial offence has been condoned or not, is always one of
intention, and where a wife is the injured party, and her hus-

band claims the benefit of a pardon, and rests his claim on nothing but an implication arising out of her conduct, the court should be extremely careful not to absolve him from the consequences of a wrong which his wife never intended to forgive. It must be remembered that she is the weaker party, and always more or less under the influence of her husband, and that in many cases her chief means of inducing her husband to perform his duties towards her cheerfully and generously, is by yielding to his wishes and trying to please him. A prudent wife, unless her husband is a craven, will always coax rather than attempt to coerce him. The rule that pardon may be implied from sexual intercourse, is not enforced so rigorously against a wife as it is against a husband. The reasons why this is so are obvious. They were stated by Lord Stowell as follows : "A woman has not the same control over her husband, has not the same guard over his honor, has not the same means to enforce the observance of the matrimonial vow; his guilt is not of the same consequence to her (*D'Aguilar* v. *D'Aguilar, 3 Eng. Eccl. Rep. 329, 337*); she is more *sub potestate,* more *inops consilii;* she may entertain more hopes of the recovery and reform of her husband ; her honor is less injured and is more easily healed. \* \* \* It is not improper that she should for a time show a patient forbearance. \* \* \* Weakness in her is pardonable in many circumstances." *Beeby* v. *Beeby, 3 Eng. Eccl. Rep. 338, 340.* Notwithstanding the radical changes which, during the last forty years, have been made in the law respecting the property rights of married women, the husband is still, in many respects, the ruler and his wife his subject. Her position is still one of obedience, and when she has no separate estate it is also one of dependence. That is the case here. The complainant, when the intercourse occurred which the defendant claims operrated as a pardon, was entirely without means and wholly dependent on the defendant for everything.

The principles above stated must control the decision in this case. And they make it clear, as I think, that the complainant is entitled to a decree. The legal effect of the sexual intercourse which she had with the defendant on May 29th was to condone

only such offences as she then knew he had committed. She did not then know that he had committed adultery. She says, it is true, that she believed he had, but her belief, it is manifest, was the product of suspicion and not of evidence. Nothing up to that time had come to her knowledge, so far as the evidence shows, which was sufficient to have induced a loyal wife to believe that her husband had committed adultery. All she had heard up to that time was what the newspaper had told her. That was sufficient, undoubtedly, to excite her fears and create suspicion, but it was not evidence, nor even such information as should have induced her to start at once, and before she had given her husband an opportunity to defend himself, in pursuit of information against him. It is the duty of a wife to be loyal to her husband; she must cling to him closer in adversity than in prosperity; believe in him when others doubt; stand by him when every other friend deserts him; defend him against all assailants; and she must be the last person to believe a report tending to disgrace or dishonor him. Knowledge of what the newspaper disclosed did not, in my judgment, impose upon the complainant the duty of going at once in search of evidence against her husband, and so making her chargeable with all the knowledge that she might thus have acquired; on the contrary, I think it was her duty to desist from inquiry until she had given him an opportunity to defend himself. That was the course she pursued. The fact is, that when the complainant had the intercourse with the defendant, which he now attempts to use as a shield against the consequences of a life of profligacy extending over more than seven years, she could not prove that he had committed a single act of adultery; much less did she know that he had made the same solemn vows of love and loyalty to another woman that he had made to her. She had heard enough to make her suspect that he had been unfaithful to her, but it is entirely certain that she did not know either the extent or the atrocious character of his misconduct. To impute such knowledge to her by presumption would, as it seems to me, be contrary to the lowest notions of justice; the presumption should, according to both reason and justice, be the other way; for, I

24

think there can be no doubt whatever, that had the complainant known the whole truth on May 29th—the full extent of the defendant's apostacy to her—that instead of going to the bed where he lay and submitting to his embraces, she would have fled from him as a polluted being. The fact that she brought this suit, within less than ten days after he turned his back upon her, shows that she did not submit to his embraces because she was indifferent to her rights, or insensible to injury. The complainant is entitled to a decree.

The defendant is also before the court on an order to show cause why he should not be adjudged guilty of contempt for disobeying an order requiring him to pay alimony. The proofs are not sufficient to support an order declaring that he has been guilty of willful disobedience, and the order to show cause must, therefore, be discharged.